UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EMERGENCY DEPARTMENT
PHYSICIANS P.C. and
EMERGENCY PROFESSIONALS
OF MICHIGAN, P.C.,

Case No. 2:19-cv-12052

HONORABLE STEPHEN J. MURPHY, III

Plaintiffs,

v.

UNITED HEALTHCARE, INC.,
et al.,

Defendants.

_____/

**OPINION AND ORDER GRANTING
IN PART DEFENDANTS' MOTION TO DISMISS AND DENYING
DEFENDANTS' MOTION FOR A MORE DEFINITE STATEMENT [29]**

Plaintiffs originally filed a complaint in Wayne County Circuit Court and alleged that Defendants underpaid them for various medical services. ECF 1–2, PgID 25–43. Almost a year after Defendants removed the case, Plaintiffs amended the complaint to include claims for medical services covered by Employee Retirement Income Security Act ("ERISA") healthcare plans. ECF 26. Defendants then moved to dismiss the first amended complaint and for a more definite statement. ECF 29.

After the parties fully briefed the motions, the Michigan Legislature enacted the Surprise Medical Billing Act, Mich. Comp. Laws § 333.24501 *et seq.*, that regulates emergency room medical billing for out-of-network providers. *See* ECF 40, PgID 1059. The Court ordered supplemental briefing to address whether the law impacts Plaintiffs' claims under Michigan's Prompt Pay Act, Mich. Comp. Laws,

1

§ 500.2006. *Id.* at 1060. And the parties fully briefed the supplemental question. ECF 41, 42.

The Court later held a hearing on the motion to dismiss with the use of video conferencing technology. ECF 43. At the hearing, the parties addressed only whether the Court should dismiss Plaintiffs' Prompt Pay Act and breach of an implied-in-fact contract claims. ECF 40, PgID 1060. For the following reasons, the Court will grant in part and deny in part the motion to dismiss and deny the motion for a more definite statement. The partial grant will effectuate complete dismissal of the case.

## BACKGROUND

Plaintiffs are hospital-based physicians in Southeast Michigan who provide emergency care to patients that enrolled in health insurance policies with Defendants. ECF 26, PgID 451, 455, 460. Under the Emergency Medical Treatment Act ("EMTALA"), 42 U.S.C. § 1395dd, Plaintiffs are required to evaluate, stabilize, and treat all patients who seek emergency room care. *See* ECF 26, PgID 457–58.

Since January 2016, Defendants have allegedly underpaid Plaintiffs for the medical care that they had provided to Defendants' insureds. *Id.* at 464–66. Because of the underpayment, Defendants have allegedly paid Plaintiffs unreasonable rates. *Id.* at 453–54. The rates are allegedly unreasonable because they are "below the reasonable value of the services rendered as measured by the community where they were performed and by the person who provided them." *Id.* Given Defendants' below-market payments, Plaintiffs alleged, they are entitled to at least $2.9 million. *Id.* at 454–55.

To complicate matters, there is no written contract between Plaintiffs and Defendants because Plaintiffs are out-of-network providers. *Id.* at 459. As out-of-network providers, they have not bound themselves in writing to Defendants' payment policies or rate schedules. *Id.* Now, without a written contract on which to sue, Plaintiffs asserted four claims against Defendants.

First, Plaintiffs asserted that they have a right to timely payment under the Prompt Pay Act. ECF 26, PgID 464–66. Next, Plaintiffs asserted that Defendants breached an implied-in-fact contract or, in the alternative, an implied-in-law contract with Plaintiffs. *Id.* at 466–70. And last, Plaintiffs sought declaratory judgment on three separate grounds. *Id.* at 470–71.

For the first claim, Plaintiffs asserted that Michigan law required Defendants to timely pay Plaintiffs, in full, for each billed claim within forty-five days. *Id.* at 465. Because Defendants have not done so, Plaintiffs believe they are entitled to the fully billed amount plus twelve percent statutory interest under § 500.2006(8). ECF 26, PgID 465–66.

For the breach of an implied-in-fact contract claim, Plaintiffs asserted that the parties' conduct created an implicit agreement to pay Plaintiffs reasonable value for their services provided to Defendants' insureds. *Id.* at 466. The implied agreement arose because Defendants have paid and continue to pay Plaintiffs market-value rates for some services. *Id.* Plus, Defendants allegedly knew that Plaintiffs never agreed to accept unreasonable, below-market rate payments. *Id.* at 467.

Next, Plaintiffs alleged that Defendants have been unjustly enriched at Plaintiffs' expense. *Id.* at 468–70. The alleged enrichment occurred because Plaintiffs fulfilled Defendants' obligations to their insureds by providing medical services covered under the insureds' benefit plans. *Id.* at 468–69. And the enrichment was unjust because Defendants failed to pay the reasonable value of the benefit that Plaintiffs conferred to them through the medical services to Defendants' insureds. *Id.* at 469.

Last, Plaintiffs sought declaratory relief on three grounds. One claim asked the Court to declare that Defendants must pay Plaintiffs "in full, and within forty-five days from the submission of all [c]lean [c]laims covering those services provided to [p]atients" under the Prompt Pay Act. *Id.* at 471. Second, Plaintiffs requested that the Court to declare that Defendants must pay Plaintiffs "the reasonable value of the emergency medicine services provided to [Defendants' insureds], . . . as well as the time-value of the money that [Defendants] have arbitrarily withheld from [Plaintiffs]." *Id.* And the last claim sought a declaration that Defendants "must pay [Plaintiffs] prospectively for [n]on-[p]articipating [c]laims in an amount that represents the reasonable value of the services [that Plaintiffs] provide." *Id.*

After Plaintiffs amended the complaint, Defendants moved to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). ECF 29, PgID 677–94. Defendants also moved for a more definite statement under Rule 12(e). *Id.* at 673–77.

## LEGAL STANDARD

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). For that reason, courts may dismiss cases

for "lack of subject-matter jurisdiction" at any time. Fed. R. Civ. P. 12(b)(1). When a defendant challenges subject-matter jurisdiction, the plaintiff bears the burden of proving jurisdiction. *Mich. S. R.R. Co. v. Branch & St. Joseph Ctys. Rail Users Ass'n, Inc.*, 287 F.3d 568, 573 (6th Cir. 2002). When a defendant facially attacks whether the plaintiff properly alleged a basis for subject-matter jurisdiction, the trial court takes the complaint's allegations as true. *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990).

The Court may grant a Rule 12(b)(6) motion to dismiss if the complaint fails to allege facts "sufficient 'to raise a right to relief above the speculative level,' and to 'state a claim to relief that is plausible on its face.'" *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). The Court views the complaint in the light most favorable to the plaintiff, presumes the truth of all well-pleaded factual assertions, and draws every reasonable inference in the nonmoving party's favor. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

But the Court will not presume the truth of legal conclusions in the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If "a cause of action fails as a matter of law, regardless of whether the plaintiff's factual allegations are true or not," then the Court must dismiss. *Winnett v. Caterpillar, Inc.*, 553 F.3d 1000, 1005 (6th Cir. 2009).

### DISCUSSION

Defendants moved for a more definite statement and to dismiss the first amended complaint. ECF 29. The Court will first address the motions to dismiss.

I.     Rule 12(b)(1) Motion to Dismiss

To begin, Defendants moved to dismiss in part for lack of subject-matter jurisdiction under Rule 12(b)(1). *Id.* at 677–78. Defendants claimed that Plaintiffs lack standing to sue under some claims because ERISA and Michigan common law preempts those claims. *Id.* at 679–85. The Court will address each ground in turn.

A.  *ERISA Preemption*

First, ERISA does not preempt Plaintiffs' state law claims. Ordinarily, "ERISA preempts state law claims that 'relate to' any employee benefit plan." *Cromwell v. Equicor-Equitable HCA Corp.*, 944 F.2d 1272, 1275 (6th Cir. 1991) (citing 29 U.S.C. § 1144(a)). ERISA therefore preempts state law claims that implicate any right to payment unless a provider has a valid assignment of benefits from a patient. *Brown v. BlueCross BlueShield of Tenn., Inc.*, 827 F.3d 543, 547–49 (6th Cir. 2016) (citing *Blue Cross of Cal. v. Anesthesia Care*, 187 F.3d 1045, 1051 (9th Cir. 1999)).

But ERISA stops short of preempting state law claims that implicate the rate of payment for medical services already provided to patients. *Brown*, 827 F.3d at 548; *see, e.g.*, *Lone Star OB/GYN Associates v. Aetna Health, Inc.*, 579 F.3d 525, 532 (5th Cir. 2009) (explaining that state law claims seeking "the proper contractual rate of payment" for medical services that are "determined to be covered" are not preempted). Indeed, the "*amount*, or level, of payment" does not depend on any assignment of benefits from patients. *Anesthesia Care*, 187 F.3d at 1051 (emphasis in original).

Here, the first amended complaint disclaimed any assignment of benefits from patients. ECF 26, PgID 454, n. 1. And the first amended complaint also stated that the claims did "not relate to or involve [Plaintiffs'] right to payment, but rather the applicable rate of payment" that Plaintiffs have a right to receive for their services. *Id.* Specifically, Plaintiffs claimed that they are entitled to "a rate reflecting the reasonable value of [their] services in the marketplace[,]" *id.* at 466, or "fair market value[,]" *id.* at 468. Put simply, the first amended complaint pleaded that the dispute arose solely from the "*amount*, or level, of payment[,]" *Anesthesia Care*, 187 F.3d at 1051 (emphasis in original), and therefore fits into the *Brown* exception.

Still, Defendants claimed that Plaintiffs would fit into the *Brown* exception only if the parties had worked out a provider agreement, or—as Defendants stated— a "direct contract[.]" ECF 29, PgID 682; *see Brown*, 827 F.3d at 548 ("[The rate] of payment . . . depends on the terms of the provider agreements.") (citing *Anesthesia Care*, 187 F.3d at 1051). To recall, the parties never entered into a written contract like a provider agreement. ECF 26, PgID 453. But a written contract is redundant here: Plaintiffs pleaded that their rate of payment arose through an implied-in-fact or an implied-in-law contract with Defendants. *Id.* at 466–470.

Under ERISA preemption, provider agreements and implied contracts are treated the same. *See Marin Gen. Hosp. v. Modesto & Empire Traction Co.*, 581 F.3d 941, 947–49 (9th Cir. 2009) (holding that breach of an implied contract created independently of ERISA was not preempted). So parties—like Plaintiffs—may assert

a breach of an implied contract claim only if the amount owed is "precisely because it is not owed under the patient's ERISA plan." *Id.* at 974.

In the first amended complaint, Plaintiffs alleged that Defendants owe them more money due to an implied contract to pay the "reasonable[,]" "market value" for Plaintiffs' services. ECF 26, PgID 466, 468. Because Plaintiffs did not claim that the alleged implied contract covered payments owed under any ERISA plan, the claim therefore "does not stem from [a] ERISA plan[.]" *Marin General Hosp.*, 581 F.3d at 948. And because Plaintiffs alleged the implied contract with Defendants was an "independent legal obligation[,]" Plaintiffs' claims fit into the *Brown* exception. *Id.* at 951; *see Aetna Health Inc. v. Davila*, 542 U.S. 200, 210 (2004) (explaining that ERISA preempts claims that "at some point in time, could have [been] brought [] under ERISA"); *see also Productive MD, LLC v. Aetna Health, Inc.*, 969 F. Supp. 2d 901, 938 (M.D. Tenn. 2013) (noting that federal courts allow Prompt Pay Act claims "typically where a provider sues [under] a separate contractual agreement with the insurer, *not* [under] a patient assignment") (emphasis in original). Thus, Plaintiffs met their burden to show that ERISA does not preempt their claims.

### B. Standing Under Michigan Law

Second, Plaintiffs have standing under Michigan law to proceed directly against Defendants. Admittedly, healthcare providers are barred from proceeding directly against insurance companies without a valid assignment of benefits from a patient under Michigan's no-fault automobile insurance law. *See Covenant Med. Ctr., Inc. v. State Farm Mut. Auto. Ins. Co.*, 500 Mich. 191, 213–14 (2017). But *Covenant*

held only that healthcare providers lack a private right to sue "no-fault insurers for recovery of personal protection insurance benefits under the no-fault act." *Id.* at 196. And Plaintiffs' claims have nothing to do with no-fault automobile insurance.

Instead, Plaintiffs alleged that Defendants had underpaid them for their services based on an implied-in-fact contract. ECF 26, PgID 466–68. Nothing in *Covenant* prevents Plaintiffs from bringing simple breach of contract claims against insurance companies unrelated to no-fault insurance benefits. *See VHS Huron Valley Sinai Hosp. v. Sentinel Ins. Co.*, 322 Mich. App. 707, 713 (2018) (noting that *Covenant* affected only healthcare providers' rights to "pursue a statutory cause of action for [personal protection injury] benefits directly from an insurer") (citations omitted). In short, Michigan law allows Plaintiffs' claims to proceed against Defendants for the alleged underpayments. The Court will therefore deny Defendants' Rule 12(b)(1) motion to dismiss.

II.  <u>Rule 12(b)(6) Motion to Dismiss the First Amended Complaint</u>

Next, Defendants moved to dismiss the first amended complaint for failure to state a claim under Rule 12(b)(6). *Id.* at 678–79. Defendants first asserted that Plaintiffs lacked a private right to sue under the Prompt Pay Act. *Id.* at 685–88. Defendants also moved to dismiss the implied-in-fact and unjust enrichment claims. *Id.* at 689–93. Last, Defendants moved to dismiss the declaratory judgment claims. *Id.* at 693–94. The Court will address each ground in turn.

## A. Prompt Pay Act Claim

Plaintiffs frame their Prompt Pay Act claim in two ways. First, Plaintiffs alleged that § 500.2006(12) creates a private right to sue Defendants for the full amount of each claim. ECF 35, PgID 960; *see also* ECF 26, PgID 465–66. Second, Plaintiffs alleged that § 500.2006(12) creates a private right to sue Defendants for the twelve percent statutory interest on all untimely paid claims. ECF 43, PgID 1101, 1107. In brief, the Court finds that Plaintiffs failed to state a claim upon which relief could be granted for both parts of the claim.

### 1. Background

Section 500.2006 is also known as the Prompt Pay Act and is part of the Uniform Trade Practices Act ("UTPA"), Mich. Comp. Laws § 500.2001 *et seq*., which, in turn, makes up part of Michigan's Insurance Code. The Prompt Pay Act creates processing and payment procedures that healthcare professionals must follow for health insurers to pay their claims. § 500.2006(8). The Act requires that "[a] clean claim must be paid within 45 days after receipt of the claim by the health plan. A clean claim that is not paid within 45 days bears simple interest at a rate of 12% per annum." § 500.2006(8)(a). Clean claims are—in essence—valid, medically necessary and appropriate claims. *See* § 500.2006(14)(a).

Defendants asserted that the Prompt Pay Act lacks a private right under which Plaintiffs may pursue their claims. ECF 29, PgID 685. But Plaintiffs argued that interpreting the Prompt Pay Act's "plain and ordinary meaning" establishes the private right that Plaintiffs seek. ECF 35, PgID 960–62.

When interpreting a state statute, the Court "must follow state interpretations of [those] statutes, and must predict how the state Supreme Court would [interpret the statute] if it has not yet done so." *Bevan & Associates, LPA, Inc. v. Yost*, 929 F.3d 366, 374 (6th Cir. 2019) (internal quotations and citations omitted)). For statutory text, the Michigan Supreme Court interprets words based on "their ordinary meaning and their context within the statute and read them harmoniously to give effect to the statute as a whole." *People v. Peltola*, 489 Mich. 174, 181 (2011). The Court must also consider "the *placement* of the critical language in the statutory scheme." *Johnson v. Recca*, 492 Mich. 169, 177 (2012) (emphasis in the original). And the Court "must give effect to every word, phrase, and clause in a statute and avoid an interpretation that would render any part of the statute surplusage or nugatory." *State Farm Fire & Cas. Co. v. Old Republic Ins. Co.*, 466 Mich. 142, 146 (2002).

When two statutes regulate "the same subject [matter] or [] share a common purpose[,]" the Michigan Supreme Court follows the *in pari materia* doctrine. *People v. Mazur*, 497 Mich. 302, 313 (2015) (citation omitted); *see generally* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* § 39 (2012) (related-statutes canon). Under the doctrine, the two statutes "should, if possible, be read together to create a harmonious body of law." *Id.* Indeed, "[t]wo statutes that form 'a part of one regulatory scheme' should be read [in a like manner]." *People v. Stephan*, 241 Mich. App. 482, 498 (2000) (quoting *In re Complaint of Southfield Against Ameritech Mich.*, 235 Mich. App. 523, 527 (1999)).

11

If "a plain reading of the statute does not support" creating a private right to sue, then the Michigan Supreme Court disfavors implying one. *Grand Traverse Cnty. v. State of Michigan*, 450 Mich. 457, 465 (1995). Indeed, the Michigan Supreme Court has routinely "refused to impose a remedy for a statutory violation in the absence of evidence of legislative intent[.]" *Lash v. City of Traverse City*, 479 Mich. 180, 193 (2007).

To establish a private right to sue, Plaintiffs rely on subsection twelve of the Prompt Pay Act. ECF 35, PgID 960. That subsection allows a healthcare professional to "file a complaint with the director[,]" § 500.2006(12), who is the Director of the Michigan Department of Insurance and Financial Services, § 500.102(c). The Director may then impose civil fines for each unpaid clean claim. § 500.2006(13). But subsection twelve also provides that the grievance procedure "does not prohibit a health professional . . . from seeking court action." § 500.2006(12).

And now the Court must address whether Plaintiffs have a private right to sue under § 500.2006(12).

### 2. *Private Right to Sue for the Full Amounts of Claims*

Because the claim is one of first impression, the Court will begin by examining the Prompt Pay Act's plain text to determine if it creates an expressed private right to sue. *See Grand Traverse Cnty.*, 450 Mich. at 465. The Court will then determine whether the Court must imply a private right to sue in the Prompt Pay Act.

### a. *Expressed Private Right to Sue*

Put simply, a plain reading of the Prompt Pay Act's text provides no expressed private right to sue. For one, the only text in the Prompt Pay Act that addresses any court action is the text that explains, "[t]his subsection does not prohibit a health professional . . . from seeking court action." § 500.2006(12). But in the same subsection, the text explains that after a Prompt Pay Act violation, a healthcare professional can "file a complaint with the [Director of the Michigan Department of Insurance and Financial Services.]" *Id.* Moreover, the next subsection explains that the Director may impose fines for each Prompt Pay Act violation. § 500.2006(13). When considering the text's placement and its ordinary meaning, the Prompt Pay Act no doubt established a public enforcement right. *See Johnson*, 492 Mich. at 177; *Peltola*, 489 Mich. at 181. But whether a plain reading of the Prompt Pay Act's text establishes a private enforcement right is less clear.[1]

At the least, the Prompt Pay Act's plain text does not preclude a private enforcement right through, for example, a breach of contract claim. *See* § 500.2006(12) ("This subsection does not prohibit a health professional. . . from seeking court action."). But the Court's analysis of an express right to sue does not end there. The Court must interpret the Prompt Pay Act's text—if possible—in a

---

[1] Indeed, the Prompt Pay Act's text by itself is unclear—at best—about creating a private right to sue because in states that do authorize a private right to sue, those states' acts create a right without question. *See, e.g.*, W. Va. Code § 33-45-3 ("Any provider . . . is entitled to initiate an action to recover actual damages.").

manner that is harmonious to the recently enacted Surprise Medical Billing Act. *Mazur*, 497 Mich. at 313.

Although Plaintiffs did not bring a claim under the Surprise Medical Billing Act, the new law regulates the same subject matter as the Prompt Pay Act: emergency room medical billing. Here, interpreting the Prompt Pay Act and the Surprise Medical Billing Act's texts together necessarily means that the Prompt Pay Act lacks a private right to sue for the full amounts of billed claims.

For example, the Surprise Medical Billing Act created a specific scheme for calculating the amount that an insurer must reimburse an out-of-network healthcare provider for emergency services. *See* Mich. Comp. Laws § 333.24507(2) ("[T]he nonparticipating provider shall submit a claim to the patient's carrier . . . and shall accept from the patient's carrier, as payment in full, the greater of the following . . . ."). Meanwhile, the Prompt Pay Act created a specific scheme for determining *when* an insurer must reimburse an out-of-network healthcare provider. *See* § 500.2006(7) ("This section does not affect a health plan's ability to prescribe the terms and conditions of its contracts, other than as provided in this section for timely payment."); § 500.2006(8)(a) ("A clean claim must be paid within 45 days after receipt of the claim by the health plan.").

Because of the interplay between the two schemes, the Legislature necessarily intended the two statutes to complement one another. *See Herrick Dist. Library v. Library of Mich.*, 293 Mich. App. 571, 592 n. 13 (2011) (Saad, J.) ("[A] general rule of statutory construction is that the Legislature is presumed to know of and legislate in

harmony with existing laws.") (citations and quotations omitted). In the end, the Surprise Medical Billing Act regulates *how much* an insurer must pay a healthcare provider while the Prompt Pay Act regulates *how quickly* an insurer must pay a healthcare provider. *See Mazur*, 497 Mich. at 313 ("[S]tatutes that relate to the same subject or that share a common purpose should, if possible, be read together to create a harmonious body of law."). If the Legislature had intended the Surprise Medical Billing Act to regulate the Prompt Pay Act's scheme, then the Legislature would have repealed the Prompt Pay Act. But the Legislature did not do so. *See People v. Higuera*, 244 Mich. App. 429, 436 (2001) ("The intent to repeal must very clearly appear . . . .") (citing *Wayne Cnty. Prosecutor v. Dep't of Corrs.*, 451 Mich. 569, 576 (1996)); *see generally* Scalia & Garner, *Reading Law: The Interpretation of Legal Texts* § 55 (presumption against implied repeal).

In brief, based on basic statutory interpretation, the Prompt Pay Act's language creates no private right to sue. The Court will now examine whether Michigan case law requires the Court to imply a private right to sue in the Prompt Pay Act.

### b. *Implied Private Right to Sue*

Generally, "a violation of the [UTPA] . . . does not give rise to a private cause of action." *Isagholian v. Transamerica Ins. Corp.*, 208 Mich. App. 9, 17 (1994) (citing *Young v. Mich. Mut. Ins. Co.*, 139 Mich. App. 600, 604–06 (1984)). That is because "[t]he UTPA [merely] encourages prompt payment of contractual insurance benefits." *Nickola v. MIC Gen. Ins. Co.*, 500 Mich. 115, 125 (2017).

To that end, the Court must avoid presuming an implied right to sue for money damages in a comprehensive regulatory scheme. *See Gardner v. Wood*, 429 Mich. 290, 304 n. 7 (1987) (cautioning against creating implied rights of action); *see generally* Scalia & Garner, *Reading Law: The Interpretation of Legal Texts* § 51 (presumption against implied right of action). In fact, for the longest time, there was "no implied private cause of action in tort for [violating § 500.2006.]" *Young*, 139 Mich. App. at 606. Still, there is a distinguishable exception.

For example, § 500.2006(4) allows third-party tort claimants—but not insureds—to make claims against insurance companies to recover the twelve percent penalty interest. *Nickola*, 500 Mich. at 132. For the most part, however, "[u]nless a specific statute says otherwise, only the county prosecutor or the state attorney general may sue an insurer for violation of the Insurance Code." *Waskul v. Metro. Life. Ins. Co.*, No. 17-13932, 2018 WL 3647102, at *4 (E.D. Mich. July 31, 2018) (citing Mich. Comp. Laws § 500.230).

Admittedly, insureds "may assert a private cause of action to recover the interest penalty in" § 500.2006 if the insurer fails to pay timely claims. *Young*, 139 Mich. App. at 606 (quoting *Barker v. Underwriters at Lloyd's, London*, 564 F. Supp. 352, 355 (E.D. Mich. 1983)). But those case holdings do not suggest that § 500.2006 generally creates right to recover the full amounts of billed claims. *Young*, 139 Mich. App. at 605. And yet Plaintiffs are claiming just that.

Plaintiffs asserted § 500.2006(12) as a cause of action "for damages in the amount of their billed charges" against Defendants. ECF 26, PgID 465–66; ECF 43,

16

PgID 1101. But Plaintiffs cannot sue for those damages under the statute because, apart from the unclear statutory text, Michigan courts have not recognized that specific private right to sue. *See Young*, 139 Mich. App. at 604–06; *see also* § 500.230 ("Every penalty provided for by [the Insurance Code] . . . shall be sued for and recovered in the name of the people by the [county prosecutor or] . . . the attorney general.").[2]

In short, Plaintiffs cannot maintain a claim for "damages in the amount of their billed charges" for three reasons. ECF 26, PgID 465–66. First, the Prompt Pay Act's "ordinary meaning and [] context" and its role in the statutory scheme do not establish that the Michigan Legislature created a private right to sue. *Peltola*, 489 Mich. at 181; *see Grand Traverse Cnty.*, 450 Mich. at 465. Second, Michigan state courts have routinely failed to imply a private right to sue under the Prompt Pay Act, *Young*, 139 Mich. App. at 604–06, and the UTPA, *Isagholian*, 208 Mich. App. at 17. And third, Michigan state courts recognize that only state actors may sue under the Insurance Code. *Waskul*, 2018 WL 3647102, at \*4. The Court will now address Plaintiffs' claim to penalty interest under the Prompt Pay Act.

### 3. *Private Right to Sue for Twelve Percent Penalty Interest*

Plaintiffs have no private right to sue Defendants for the twelve percent penalty interest rate on untimely paid claims. Admittedly, under § 500.2006(4), an insured may collect penalty interest. *Palmer Park Square, LLC v. Scottsdale*

---

[2] Almost all States have adopted Prompt Pay Acts and almost all those Acts lack private rights to sue. *See* Michael Flynn, *The Check Isn't in the Mail: The Inadequacy of State Prompt Pay Statutes*, 10 DePaul J. of Health Care L. 397, 404 (2007).

*Insurance Co.*, 878 F.3d 530, 535–36, 539 (6th Cir. 2017) (explaining that § 500.2006(4) creates a legal obligation to pay penalty interest at twelve percent). But § 500.2006(4) is not at issue; §§ 500.2006(8) and (12) are.

The Prompt Pay Act's plain text dictates that the obligations created under subsection four do not apply to subsections eight or twelve. *See* § 500.2006(7) ("Subsections (1) to (6) do not apply and subsections (8) to (14) do apply to health plans when paying claims to health professionals[.]"). And the Prompt Pay Act's plain text thus creates two separate regulatory schemes: one for health insurance and one for all other insurance. *See Old Republic Ins. Co.*, 466 Mich. at 146 (emphasizing that the Court "must give effect to every word, phrase, and clause in a statute . . . ."). The separate treatment is justified because the Michigan Legislature amended the Prompt Pay Act to regulate health insurance in 2002—decades after the Legislature created the existing regulatory scheme for other kinds of insurance. *See* 2002 Mich. Pub. Acts 316.

It follows, then, that Michigan case law creating a private right to sue for penalty interest is inapplicable to Plaintiffs' claims because the Michigan cases dealt specifically with subsections one through six of the Prompt Pay Act—not subsections eight or twelve. *See, e.g.*, *Palmer Park Square, LLC*, 878 F.3d at 537, 539 ("[T]he language of § 500.2006 itself [establishes] that an insured may obtain penalty interest[.]"); *Young*, 139 Mich. App. at 605 ("The Court finds that plaintiffs may assert a private cause of action to recover the interest penalty in section 2006 of the UTPA since that section provides that the insurer pay the interest penalty to the insured on

18

claims not paid on a timely basis.") (quoting *Barker*, 564 F. Supp. at 355). And because no court has interpreted a claim exactly like the present one for a private right to sue, the Court must interpret what the statute permits beginning with an examination of the Prompt Pay Act's plain text. *See Grand Traverse Cnty.*, 450 Mich. at 464–65.

As the Court already explained, the Prompt Pay Act's plain text—especially when interpreted with the Surprise Medical Billing Act—creates no private right to sue. If the Michigan Legislature had intended that the private right to sue for penalty interest would apply to health insurance, then it would not have created a separate regulatory scheme for health insurance. *See* § 500.2006(7). And because the Court must avoid presuming an implied private right of action in a comprehensive regulatory scheme, Plaintiffs cannot maintain a claim for penalty interest under the Prompt Pay Act. *See Gardner*, 429 Mich. at 304 n. 7.

In sum, the Rule 12(b)(6) motion to dismiss will be granted. Plaintiffs may not assert a private right to sue for the full amounts of their billed claims or for penalty interest claims under the Prompt Pay Act.

### B. *Breach of an Implied-in-Fact Contract Claim*

Second, the Court will grant the Rule 12(b)(6) motion to dismiss Plaintiffs' breach of an implied-in-fact contract claim. To prove a breach of contract, Plaintiffs must plead three elements: (1) a contract, (2) Defendants' breach of the contract, and (3) damages to Plaintiffs caused by the breach. *Bank of Am., NA v. First Am. Title Ins.*, 499 Mich. 74, 100–01 (2016).

19

To prove that the parties had an implied contract, Plaintiffs must also show: (1) competency to contract, (2) proper subject matter, (3) consideration, (4) mutuality of agreement, and (5) of obligation. *Mallory v. City of Detroit*, 181 Mich. App. 121, 127 (1989). Of those five elements, the parties contested only the last three. *See* ECF 29, PgID 690.

To plead and prove consideration, a party must show a bargained-for-exchange of legal value or detriment. *Higgins v. Monroe Evening News*, 404 Mich. 1, 20 (1978). Generally, a mere promise to perform an existing legal duty is insufficient consideration. *Yerkovich v. AAA*, 461 Mich. 732, 741 (2000). An exception, however, exists if a party owes a preexisting duty to a third person, rather than to the promisor. *See* Restatement (Second) of Contracts § 73 cmt. d (Am. Law. Inst. 1981) ("[T]endency of the law has been simply to hold that performance of contractual duty can be consideration if the duty is not owed to the promisor.").

Next, "an implied-in-fact contract arises between parties when those parties show a mutual intention to contract." *Kingsley Assoc., Inc., v. Moll PlastiCrafters, Inc.*, 65 F.3d 498, 504 (6th Cir. 1995). Mutual contractual intent (agreement) is implied or deduced "from the conduct of the parties, language used or things done by them, or other pertinent circumstances[.]" *Erickson v. Goodell Oil Co., Inc.*, 384 Mich. 207, 212 (1970). To evaluate mutual intent, Michigan courts "use an objective test, looking to the expressed words of the parties and *their visible acts*." *Rowe v. Montgomery Ward & Co.*, 437 Mich. 627, 640 (1991) (internal quotations omitted) (emphasis in original).

20

For mutual obligation, the parties must "assume obligations by their conduct." *Williams v. Unit Handling Sys. Div. of Litton Sys., Inc.*, 433 Mich. 755, 758 (1989). And an implied-in-fact contract arises only "when services are performed by one who at the time expects compensation from another who expects at the time to pay therefore." *In re McKim Estate*, 238 Mich. App 453, 458 (1999) (quotations and citation omitted).

Here, and as explained earlier, Plaintiffs must provide Defendants' insureds with medical care under EMTALA. 42 U.S.C. § 1395dd. At the same time, Defendants have contracts with their insureds to offer health insurance for emergency medical care. *Id.* Ordinarily, in-network healthcare providers that sue an insurer for breach of contract ultimately sue under a written agreement. Sometimes, however, healthcare providers sue an insurer when they have an assignment of benefits from the patient. But here there are no written contracts between Plaintiffs and Defendants because Plaintiffs are out-of-network providers, and there are no assignments of benefits. *Id.* at 454 n. 2, 459. Yet, as both parties explained at oral argument, one Plaintiff (Emergency Department Physicians, P.C.) was in-network with Defendants until October 2017. ECF 43, PgID 1099, 1111. So Emergency Department Physicians, P.C., essentially alleged that once its written, in-network contract with Defendants ended, it then promptly entered into an implied-in-fact contract with the same Defendants. *See id.*

To succeed in alleging a proper breach of an implied contract claim, and like alleging a proper breach of an express contract claim, Plaintiffs must plausibly state

"an enforceable promise and a breach thereof . . . ." *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 456 (6th Cir. 2001). In the first amended complaint, Plaintiffs claimed that for "emergency medicine services provided to Patients, the parties implicitly agreed . . . that [Defendants] would reimburse [Plaintiffs] at a rate reflecting the reasonable value of [Plaintiffs'] services in the marketplace." ECF 26, PgID 466. In other words, Plaintiffs alleged that because they treated Defendants' insureds, Defendants agreed to pay them reasonable rates. *See id.* But the allegations in the first amended complaint contradict that conclusion.

For one, the complaint notably claimed that the parties never reached a "mutually agreeable rate of payment for [Plaintiffs'] services . . . ." ECF 26, PgID 463.[3] And the complaint stated that Plaintiffs "have not agreed to accept any form of discounted rate from [Defendants], or to be bound by [Defendants'] payment policies or rate schedules." *Id.* at 459.

In short, when the Court views the first amended complaint in the light most favorable to Plaintiffs, and draws every reasonable inference in Plaintiffs' favor, it becomes clear the parties never agreed to the implied-in-fact contract. *See* ECF 26, PgID 463. Put another way, the parties could not simultaneously agree that

---

[3] The full allegation stated, "[Defendants] refused to negotiate with [Plaintiffs] to reach a mutually agreeable rate of payment for [Plaintiffs'] services and are therefore obligated to pay [Plaintiffs'] Clean Claims in full [under the Prompt Pay Act.]" ECF 26, PgID 463. Because the second half of the allegation that discussed the Prompt Pay Act is a legal conclusion, the Court will not presume its truth. *See Iqbal*, 556 U.S. at 678. But even if that obligation existed under the Prompt Pay Act, there would then be no consideration supporting the implied-in-fact contract because a promise to perform an existing legal duty is insufficient consideration. *Yerkovich*, 461 Mich. at 741.

Defendants would pay Plaintiffs reasonable rates while also never agreeing on a rate for Plaintiffs' services. *See* ECF 26, PgID 463. The only objective inference the Court can draw from the parties' visible acts is that they never agreed that Plaintiffs would receive reasonable rates for their services. *See Rowe*, 437 Mich. at 640 (noting that the Court must evaluate the parties' "*visible acts*") (emphasis in original).

Still, Plaintiffs claimed that the parties need not have agreed to a specific price term to have formed an implied-in-fact contract. ECF 35, PgID 967; ECF 43, PgID 1120. And that may be so if there are no "alleg[ations] that the parties mutually assented to a specific reimbursement rate." ECF 35, PgID 966 (Plaintiffs' response brief); *see Reed v. Yackell*, 473 Mich. 520, 531 (2005) ("A contract implied in fact arises when services are performed by one who at the time expects compensation from another who expects at the time to pay therefor.") (quotations omitted). But Plaintiffs never alleged that kind of contract.

Instead, in the first amended complaint, Plaintiffs asserted that the implied-in-fact contract arose specifically because "the parties implicitly agreed . . . that [Defendants] would reimburse [Plaintiffs] at a rate reflecting the reasonable value of [Plaintiffs'] services in the marketplace." ECF 26, PgID 466. Thus, to show that a contract arose—let alone that Defendants breached the contract by not paying reasonable rates for Plaintiffs' services—Plaintiffs needed to plausibly plead that Defendants agreed to pay reasonable rates. *See Bank of Am., NA*, 499 Mich. at 100–01. And they did not do so: Plaintiffs specifically alleged the parties did not agree on a "mutually agreeable rate of payment for [Plaintiffs'] services . . . ." ECF 26, PgID

23

463. In all, Plaintiffs have failed to state a claim for breach of an implied-in-fact contract. The Court will therefore grant the motion to dismiss Plaintiffs' breach of an implied-in-fact contract claim.

### C. Unjust Enrichment Claim

Third, the Court will grant the Rule 12(b)(6) motion to dismiss Plaintiffs' unjust enrichment claim. Michigan law defines unjust enrichment as "the unjust retention of money or benefits which in justice and equity belong to another." *Tkachik v. Mandeville*, 487 Mich. 38, 47–48 (2010) (citation omitted). As the Michigan Supreme Court has explained, unjust enrichment "corrects for a benefit received by the defendant[.]" *Wright v. Genesee Cnty.*, 504 Mich. 410, 422 (2019). The elements of unjust enrichment are: "(1) receipt of a benefit by defendant[s] from plaintiff[s], and (2) an inequity resulting to plaintiff[s] because of the retention of the benefit by defendant[s]." *Belle Isle Grill Corp. v. Detroit*, 256 Mich. App. 463, 478 (2003).

For the first element, Plaintiffs claimed that they have fulfilled Defendants' own "obligation to their [insureds by] providing valuable emergency medicine services to [Defendants' insureds.]" ECF 26, PgID 468. In fact, Plaintiffs also alleged that all medical services they provided covered services to Defendants' insureds. *Id.* at 469. So, under Plaintiffs' theory, because Defendants "are responsible for ensuring that their members receive emergency medical services at any time of the day without the need to obtain those services from participating providers[,]" Plaintiffs have conferred a benefit to Defendants. *See id.* at 460. But the Court need not address the first element, because Plaintiffs claim fails under the second.

Under that element, Plaintiffs have not plausibly alleged an inequity. Federal courts have certainly allowed healthcare providers to claim unjust enrichment against insurers. *See Air Evac EMS Ins. v. USAble Mut. Ins. Co.*, No. 4:16-cv-00266, 2018 WL 2422314, at *10 (E.D. Ark. May 29, 2018) (collecting cases). But in those cases, the healthcare providers could *only* bill the insurers—*not* the patients—under state law. *Id.* Without anyone else from whom to obtain relief, inequity arose in those cases because the healthcare provider could not bill anyone other than the insurer. *See id.*; *Appalachian Reg'l Healthcare v. Coventry Health and Life Ins. Co.*, No. 5:12-cv-114, 2013 WL 1314154, at *4 (E.D. Ky. Mar. 28, 2013) (pointing out that the healthcare provider "has only [the insurer] to look to for reimbursement for healthcare services provided to [the insureds]"). But nothing here is preventing Plaintiffs from directly billing Defendants' insureds. *See Gold v. Cadence Innovation, LLC*, 577 F. Supp. 2d 896, 903 (E.D. Mich. 2008) (noting that, among other reasons, a party could not assert unjust enrichment when "he still has the right to pursue [a third party] if there is any obligation on the part of [the third party] to compensate him for his [service]").

On the contrary, at oral argument, Plaintiffs' counsel asserted that Michigan policy prevents Plaintiffs from directly billing the insureds because the insurers cannot deny payment for emergency medical services. ECF 43, PgID 1119. Counsel specifically pointed to Mich. Comp. Laws § 500.3406k. *Id.* True enough, the statute demands that "[a]n insurer shall not deny payment for emergency health services up to the point of stabilization provided to an insured . . . [.]" § 500.3406k(1). But

Plaintiffs' counsel omitted that § 500.3406k prevents an insurer from denying payment only "because of . . . (a) [t]he final diagnosis [or] (b) [p]rior authorization not being given by the insurer before emergency health services were provided." *Id.* And Plaintiffs failed to allege that the claims here fell into either category. In sum, Plaintiffs' claim is different than other claims when healthcare providers could assert unjust enrichment claims against an insurer because Plaintiffs can still bill the insureds for any owed amounts. *See Air Evac EMS Ins.*, 2018 WL 2422314, at \*10.

What is more, "not all enrichment is necessarily unjust in nature." *Morris Pumps v. Centerline Piping, Inc.*, 273 Mich. App. 187, 196 (2006). To expand, "the mere fact that a third person benefits from a contract between two other persons does not make such third person liable in quasi-contract, unjust enrichment, or restitution." *Id.* (quoting 66 Am. Jur. 2d, Restitution and Implied Contracts, § 32, p. 628). And whenever "a third person benefits from a contract entered into between two other persons, in the absence of some misleading act by the third person, the mere failure of performance by one of the contracting parties does not give rise to a right of restitution against the third person." *Id.* (quoting 66 Am. Jur. 2d, Restitution and Implied Contracts, § 32, p. 628).

Plaintiffs never alleged that Defendants misled them. The first amended complaint alleged that Defendants "have led both [insureds] and [Plaintiffs] to believe that they would pay for the [covered] services rendered by the [Plaintiffs] to the [insureds]." ECF 26, PgID 469. But in the same paragraph, the first amended complaint alleged that Defendants "adjudicated and paid for those services as

covered, albeit at an amount less than the reasonable value of the services." *Id.* Put another way, Defendants said they would pay for the services and they did so. *See id.* The first amended complaint never alleged that Defendants led Plaintiffs to believe that they would pay a certain amount for covered services or that Defendants paid nothing for a covered claim. *See id.* Plaintiffs therefore have not shown that any enrichment led to an inequity. *See Morris Pumps*, 273 Mich. App. at 196.

In sum, Plaintiffs have not plausibly pleaded that an inequity arose from any benefit that Defendants received. Thus, the Court will grant Defendants' motion to dismiss the claim for unjust enrichment.

### D. Declaratory Relief Claims

Plaintiffs finally asserted three grounds for declaratory relief. ECF 26, PgID 470–71. Plaintiffs' first ground for declaratory relief sought prospective relief about how Defendants are required to pay Plaintiffs in the future based on the Prompt Pay Act. *See id.* at 471. The second ground sought retrospective relief and appears redundant to Plaintiffs' claim for breach of an implied-in-fact contract. *See id*. And the last ground sought prospective relief, but it lacks a legal cause of action. *See id.* In response, Defendants asserted that the declaratory judgment claims should be dismissed because the claims are duplicative of Plaintiffs' other unmeritorious claims. ECF 29, PgID 694.

Although the first amended complaint reasserted declaratory relief claims under Mich. Ct. R. 2.605, ECF 26, PgID 470–71, the Court must apply the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*, and not state law. *See Foreward*

*Magazine, Inc. v. OverDrive, Inc.*, No. 10-cv-1144, 2011 WL 31044, at *3 (W.D. Mich. Jan. 5, 2011) ("[W]hen a state declaratory judgment action has been removed to federal court, it is treated as though it had been filed under the federal Declaratory Judgment Act.") (collecting cases).

But before the Court applies federal law, the Court must first determine whether Plaintiffs have standing under state law to seek declaratory relief. *See Aarti Hospitality, LLC v. City of Grove City*, 350 F. App'x 1, 6 (6th Cir. 2009) (citing *Zicherman v. Korean Air Lines Co.*, 516 U.S. 217, 225 (1996)). The Court must therefore apply state substantive law to determine whether Plaintiffs have standing to seek a declaratory judgment. *See id.* ("Whether [P]laintiffs have standing to seek a declaratory judgment under [an Ohio law] is a question of Ohio substantive, not federal procedural, law."). If Plaintiffs have standing, then the Court will apply the Federal Declaratory Judgment Act. *See Mich. Corrs. Org. v. Mich. Dep't of Corrs.*, 774 F.3d 895, 902 (6th Cir. 2014) ("The point of the [Federal Declaratory Judgment Act] is to create a remedy for a preexisting right enforceable in federal court.").

### 1. *Statutory Standing Under Michigan Law*

"[W]henever a litigant meets the requirements of [Mich. Ct. R. 2.605], it is sufficient to establish standing to seek a declaratory judgment." *See Lansing Schs. Educ. Ass'n v. Lansing Bd. of Educ.*, 487 Mich. 349, 372 (2010). To meet the requirements, there must be an "actual controversy." Mich. Ct. R. 2.605(A)(1). For the jurisdictional requirement, "the court [must] have jurisdiction of an action on the same claim or claims in which the plaintiff sought relief other than a declaratory

28

judgment." Mich. Ct. R. 2.605(A)(2). In other words, if a plaintiff seeks a declaratory judgment, then that plaintiff must also have standing in the cause of action or else the Court lacks jurisdiction. *See David v. Detroit Pub. Schs. Cmty. Dist.*, --- F. App'x ---, No. 18-2304, 2020 WL 6540411, at *5 (6th Cir. Nov. 6, 2020) (citing *Miller v. Allstate Ins. Co.*, 481 Mich. 601, 607–08 (2008)).

Under Michigan law, "a litigant has standing whenever there is a legal cause of action." *Lansing Schs. Educ. Ass'n*, 487 Mich. at 371. But, regardless of whether a plaintiff has constitutional standing, the plaintiff "may be precluded from enforcing a statutory provision, if the Legislature so provides." *Miller*, 481 Mich. at 607. To determine whether a plaintiff has statutory standing, the Court must evaluate whether the Legislature "has accorded this injured plaintiff the right to sue the defendant to redress his injury." *Id.* (citation omitted). Thus, for example, a statute may not create a private cause of action for monetary damages, but the statute may allow a plaintiff to seek enforcement through a declaratory judgment claim. S*ee Lash*, 479 Mich. at 196–97. When determining whether a statute creates standing to sue for declaratory relief, the Court must rely on basic principles of statutory interpretation. *Miller*, 481 Mich. at 607. And the Court will now address whether Plaintiffs have standing to assert their three grounds for declaratory relief.

### a.  First Ground of Relief

To begin, Plaintiffs sought a declaration that Defendants must pay their claims in full under the Prompt Pay Act. ECF 26, PgID 471. As the Court explained earlier, Plaintiffs have no private right to sue under the Prompt Pay Act for monetary

damages or penalty interest. When it comes to declaratory relief, no court has determined whether a party can sue for such relief under the Prompt Pay Act. Thus, as an issue of first impression, the Court must interpret whether the Prompt Pay Act allows Plaintiffs to assert a cause for declaratory relief. *See Miller*, 481 Mich. at 608–10 (explaining the statutory-standing inquiry).

For the same reasons that the Michigan Supreme Court denied statutory standing for seek declaratory relief in *Miller*, the Court will deny Plaintiffs' request for declaratory relief here. In *Miller*, the Michigan Supreme Court relied on simple statutory interpretation to determine that a statute allowed only the Michigan Attorney General to challenge a corporation's status. 481 Mich. at 610–15. In short, although the analysis turned on the fact that the statutory text allowed only the Attorney General to bring a challenge, *id.* at 610–613, the historical practice also supported the Court's reasoning in that case, *id.* at 613–15.

Here, for the reasons stated above, a plain reading of the Prompt Pay Act's text in no way creates a private right to sue for declaratory relief. Instead, it established a public enforcement right. *See* §§ 500.2006(12); 333.24507. To that end, the Prompt Pay Act's historical practice also supports not finding a private right to seek declaratory relief.

For example, the Prompt Pay Act is part of the UTPA, which generally "encourages prompt payment of contractual benefits." *Nickola*, 500 Mich. at 125. Plus, the Michigan Legislature has already prescribed a remedy for UTPA violations. *See Robertson v. State Farm Fire and Cas. Co.*, 890 F. Supp. 671, 677 (E.D. Mich.

1995) (detailing the statutory scheme for enforcing UTPA violations). In turn, "only the county prosecutor or the state attorney general may sue an insurer for violation of the Insurance Code." *Waskul*, 2018 WL 3647102, at *4 (citing § 500.230). At its core, the UTPA "is designed to give the Commissioner of Insurance authority over certain continuing practices of insurance companies." *Young*, 139 Mich. App. at 606. For that reason, the UTPA prevents Plaintiffs from "assert[ing] a private cause of action based on [] alleged violations of the UTPA." *Barker*, 564 F. Supp. at 355.

That said, at the hearing, Plaintiffs' counsel asserted that "[a]ll litigants in Michigan have [] the ability to seek declaratory relief . . . [without] any language in the statute to do that." ECF 43, PgID 1110–11. To support the argument, Plaintiffs' counsel cited *Lash*, in which the Michigan Supreme Court granted statutory standing for declaratory relief despite the statute lacking "a private cause of action for money damages." 479 Mich. at 191, 196–97.

But the statute in *Lash* differs from *Miller* and the Prompt Pay Act for two reasons. First, the statute in *Lash* dealt with governmental immunity, but the statute in *Miller* and the Prompt Pay Act do not. *See Lash*, 479 Mich. at 194–96 (discussing that the statute prohibited a private cause for money damages because the Legislature did not explicitly abrogate municipal immunity). Second, the statute in *Lash* had no comprehensive enforcement scheme unlike the statute in *Miller* and the Prompt Pay Act. *See Lash*, 479 Mich. at 197 (recognizing that enforcement under the statute would arise only under declaratory or injunctive relief); *Crossley v. Allstate Ins. Co.*, 155 Mich. App. 694, 697 (1984) (observing that the UTPA provides a

31

"comprehensive, exclusive scheme of enforcement"). Because the Prompt Pay Act is more like the statute in *Miller*, the Court distinguishes the outcome in *Lash* from the present case. Thus, the Court will dismiss the first ground of declaratory relief because Plaintiffs have no private right to sue for declaratory relief under the Prompt Pay Act.

### b.   *Second Ground of Relief*

The Court will also deny the second ground for declaratory relief for two reasons. First, the requested relief is redundant of the breach of an implied-in-fact contract claim. *Compare* ECF 26, PgID 471 (paragraph seventy-three) *with id.* at 468 (paragraph fifty-nine). And given that the Court has already dismissed the claim for breach of an implied-in-fact contract, the Court necessarily finds that no "actual controversy" exists because Plaintiffs failed to plead any entitlement to retroactive monetary relief under a contract. *See* Mich. Ct. R. 2.605(A)(1). Moreover, because the requested relief is not guiding the parties' future conduct, there is no "active controversy" under Mich. Ct. R. 2.605(A)(1). *See ID Ventures, LLC v. Chubb Custom Ins. Co.*, No. 17-14182, 2018 WL 1792372, at *5 (E.D. Mich. Apr. 16, 2018) ("An 'actual controversy' [] exists only 'when a declaratory judgment is necessary to guide a plaintiff's future conduct in order to preserve legal rights[.]") (citing *UAW v. Cent. Mich. Univ. Trs.*, 295 Mich. App. 286, 295 (2012)). The Court will therefore dismiss the second ground of declaratory relief.

### c. *Third Ground of Relief*

Finally, the last ground of relief for prospective payments is baseless. *See* ECF 26, PgID 471. For one, if the claim is duplicative of the breach of an implied-in-fact contract claim, then the Court dismisses it for the reasons stated above. *See* Mich. Civ. P. R. 2.605(A)(1). Second, if the claim is not duplicative, then Plaintiffs failed to allege what state law entitles them to prospective payments for the reasonable value of their services. *See* ECF 26, PgID 471. Either way, the last ground for declaratory relief fails.

### 2. *Federal Declaratory Relief Act*

Because Plaintiffs lack standing under state law, Plaintiffs have no right to any relief under the Federal Declaratory Relief Act. The Court will therefore grant Defendants' motion to dismiss the declaratory relief claims

## CONCLUSION

The Court will deny Defendants' Rule 12(b)(1) motion to dismiss, and grant Defendants' Rule 12(b)(6) motion to dismiss. Because all the claims are dismissed, the Court will find Defendants Rule 12(e) motion to dismiss is moot. Last, the Court will deny the outstanding motion to compel as moot. ECF 24.

## ORDER

**WHEREFORE**, it is hereby **ORDERED** that Defendants' motion to dismiss [29] is **GRANTED** in part and **DENIED** in part.

**IT IS FURTHER ORDERED** that Defendants' motion for a more definite statement [29] is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Plaintiffs' motion to compel discovery [24] is **MOOT**.

This is a final order that closes the case.

**SO ORDERED.**

s/ Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: December 17, 2020

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on December 17, 2020, by electronic and/or ordinary mail.

s/ David P. Parker
Case Manager